IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **NATHAN ROWAN,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**ARRIVIA INC.,** a Delaware corporation, and **ALLEN MARKETING GROUP, INC.**, a Utah corporation,<br><br>*Defendants,* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Nathan Rowan ("Plaintiff Rowan" or "Rowan") brings this Class Action Complaint and Demand for Jury Trial against Defendant Arrivia Inc. ("Defendant Arrivia" or "Arrivia") and Defendant Allen Marketing Group, Inc. ("Defendant AMG" or "AMG") to stop the Defendants from violating the Telephone Consumer Protection Act by making telemarketing calls *without consent* to consumers who registered their phone numbers on the National Do Not Call registry ("DNC). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff Rowan, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1. Plaintiff Nathan Rowan is a resident of East Rochester, New York.

2. Defendant Arrivia is a Delaware registered company headquartered in Scottsdale, Arizona. Defendant Arrivia conducts business throughout this District and throughout the U.S.

3. Defendant AMG is a Utah registered corporation headquartered in Cedar City, Utah. Defendant AMG conducts business throughout this District, and throughout the U.S.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5. This Court has personal jurisdiction over the Defendants and venue is proper because Defendant Arrivia is incorporated in this District and because Defendant AMG does business in this District, including with Arrivia, resulting in the calls to Plaintiff.

## INTRODUCTION

6. As the Supreme Court explained at the end of its last term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

8. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

9. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13. According to online robocall tracking service "YouMail," 4.9 billion robocalls were placed in March 2021 alone, at a rate of 159.4 million per day. www.robocallindex.com (last visited April 4, 2021).

14. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

16. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

17. Defendant Arrivia is a travel solutions company that sells travel packages to consumers.[3]

18. Arrivia owns and operates TravelSavingsDollars.com, a website that advertises discounted hotel stays, car rentals and other discount travel options.[4] [5]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.arrivia.com/
[4] https://travelsavingsdollars.com
[5] The website TravelSavingsDollars.com identifies itself in its terms and conditions as SOR Technology, LLC d/b/a SaveOnResorts located at 2173 Salk Ave., Suite 300 Carolsbad, CA 92008.

6

19. Even though TravelSavingsDollars.com identifies itself in its terms as SOR Technology, LLC, Defendant Arrivia acquired and operates SOR Technology.





20. In order to use the TravelSavingsDollars.com website, a consumer must have a redemption code that can either be purchased online, through Arrivia, or through one of Arrivia's third-party vendors like AMG.

21. AMG is a marketing corporation that sells vacation travel packages to consumers.

22. AMG owns and operates VacationOffer.com, a website consumers use to purchase vacation packages.

23. The Utah corporate registry shows that VacationOffer.com is a d/b/a of AMG:

---

6



24. AMG uses telemarketing to sell travel vacation packages.

25. Unfortunately, AMG places unsolicited calls to consumers who have their phone numbers registered on the DNC.

---

[7] https://secure.utah.gov/bes/displayDetails.html - Allen Marketing Group, Inc.

26. On its main website, AMG even states that it uses a unique funnel approach to turn cold leads into buyer leads:

> By using our unique "funnel" approach, we're able to turn cold leads into buyer leads and generate new business for our clients. [8]

27. Numerous consumers have posted complaints online about unsolicited telemarketing calls that they received from AMG, including complaints that were made directly to AMG itself:

**Better Business Bureau - AMG**
- "I received a phone solicitation from a sales person with Allen Marketing Group (3rd Party apparently) in August of 2018 offering a 4 day/3-Night stay on the Las Vegas Strip for any time of my choice over a 2-year period (Aug. 2020)."[9]
- "I received a cold call from this company and they outlined details of a vacation they claimed to offer me as a VIP on a list somewhere. This was a hard sell and I was told I could only buy at the time and could not discuss the details with my wife before making the purchase."[10]
- "I was solicited on a DNC phone actively registered with the FTC. Despite this, Eric, a sales rep from a VIP Concierge at PARK MGM told me he got my number because of my affiliation with Marriott and that I was selected to receive a VIP Stay offer at Park MGM any dates of my choice, except New Years for 4 days and 3 nights at $379, plus room taxes and parking fees."[11]

**Yelp.com - AMG**
- "This company has repeatedly called me trying to sell me Las Vegas travel packages unsolicited. Each time I politely asked them to remove me from their list. Then I finally asked the name of the company this last caller worked for and she told me AMG which after some research turns out to be Allen Marketing Group. When I asked why I was being called even though my number is on the federal do not call register for 8 years I was told to shut up before she berated me

---

[8] https://www.allenmg.com/
[9] https://www.bbb.org/us/ut/cedar-city/profile/marketing-programs/allen-marketing-group-inc-1166-90013879/complaints
[10] *Id.*
[11] *Id.*

- and then hung up on me. Definitely not any type of company I would want anything to do with."[12]
- "Don't waste your time or money. Received a call with an offer of great places to stay in Vegas and things to do. I'm on the Do Not Call list, so I assumed the call was from a company I already do business."[13]
- "A little less than a year ago, I got a marketing call selling a vacation offer to Las Vegas."[14]
- "Received offer by phone for a vacation package promotion - $379 for 3 day/2 night package in Orlando or Vegas with benefits ($100 gift card, $1,000 of credit to use with future Hilton or Marriott stays, and additional 3 day/2 night stay elsewhere)."

**Telemarketing Complaint Websites**
- "Called. No message. Other sites say this is a Vegas trip scam and they are super rude. Should be reported for do not call violations."[15]
- "Answered and listened. A man tries to sell me on an incredible mini-vacation package to Vegas… ***Another website he gave me was: https://www.travelsavingsdollars.com/ - this is the website where I would have to go to redeem my $1000 travel credits***… But I digress, the man tells me he works with AMG (Allen Marketing Group) and is offering this deal to build relationships so that in the future I would consider using them again…"[16] (emphasis added)
- "Called and offered me a Vegas stay. Told her my number was on the do not call list an then she called me a [***]."[17]
- "I received 2 calls from this number 2 days ago… and didn't answer…no messages left. I received a third call tonight at 7:42pm and answered… He said his name was Garrett Bolick and offered an amazing Vegas vacation package for $379…"[18]
- "Keeps calling me."[19]

28. A cursory look-up online of AMG reveals hundreds of consumer complaints regarding unsolicited telemarketing, such as the above quoted complaints.

29. Despite this fact, Arrivia relies on AMG to place telemarketing calls on its behalf to sell travel vacation packages that include financial incentives to purchase additional packages, rental cars and other travel-related services from its website TravelSavingsDollars.com.

---

[12] https://www.yelp.com/biz/allen-marketing-group-cedar-city-2
[13] *Id.*
[14] *Id.*
[15] https://800notes.com/Phone.aspx/1-702-996-8208/2
[16] *Id.*
[17] *Id.*
[18] https://800notes.com/Phone.aspx/1-702-224-2665/2
[19] https://800notes.com/Phone.aspx/1-702-224-2665/3

30. Upon information and belief, Arrivia pays AMG for each travel vacation package that includes financial incentives for use at its website TravelSavingsDollars.com.

31. Based on the foregoing, AMG was authorized by Arrivia to act on Arrivia's behalf with respect to the telemarketing phone calls to consumers described above. In addition and/or in the alternative, Arrivia ratified AMG's making of the telemarketing calls described above. Indeed, Arrivia knew that AMG places outbound telemarketing calls to consumers nationwide on behalf of Arrivia, to generate purchases on TravelSavingsDollars.com, without prior express written consent, or otherwise had knowledge of facts that would have led a reasonable person to investigate further, and yet Arrivia ratified AMG's conduct without further investigation. In addition and/or in the alternative, Arrivia was negligent in supervising AMG' making of the telemarketing calls described above. Accordingly, Arrivia is responsible for AMG's making of the telemarketing calls.

32. The Federal Communication Commission has instructed that corporations such as Arrivia may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activties to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

33. In response to these calls, Plaintiff Rowan files this lawsuit seeking injunctive relief requiring the Defendants to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF ROWAN'S ALLEGATIONS

34. Plaintiff Rowan registered his cell phone number on the DNC on June 4, 2005.

35. At all relevant times to this case, Plaintiff Rowan's cell phone number was not associated with a business and was used for personal use only.

36. On January 16, 2021 at 4:00 PM, Plaintiff received an unsolicited phone call from AMG to his phone from phone number 775-288-5507.

37. Plaintiff Rowan did not answer this call.

38. On January 17, 2021 at 3:31 PM, Plaintiff received a 2nd unsolicited phone call from AMG to his phone from phone number 775-288-5507.

39. Plaintiff Rowan did not answer this call.

40. On January 18, 2021 at 3:34 PM, Plaintiff received a 3rd unsolicited phone call from AMG to his phone from phone number 775-288-5507.

41. When Plaintiff Rowan answered this call, he heard 11 seconds of silence before the call was disconnected.

42. On January 26, 2021 at 6:56 PM, Plaintiff received a 4th unsolicited phone call from AMG to his cell from phone number 775-288-5507.

43. Plaintiff answered this call and spoke to an employee who identified herself as Carleen.

44. Carleen offered to sell Plaintiff a $399 vacation package that would include a 4-day, 3-night stay in Las Vegas, a $100 dining card, $100 credit towards a meal at Pampas Brazilian Steakhouse, a $100 American Express card, and $1,000 of travel credit to be used at TravelSavingsDollars.com, a website owned by Defendant Arrivia.

45. In order to identify which company was calling him, Plaintiff Rowan played along with the telemarketer and agreed to purchase the vacation package so he could see which company he was billed by and what documentation they would mail him.

46. When Plaintiff agreed to purchase the package, he was transferred to Andrew James, a compliance employee who reviewed the details of the package.

47. James specifically made reference to the $1,000 travel credit that could be used at TravelSavingsDollars.com.

48. James told Plaintiff that the phone number for Guest Services is 866-551-0868.

49. 866-551-0868 is the phone number displayed on Defendant AMG's website for non-local clients:

[20]

50. Shortly after purchasing the vacation package, Plaintiff received a purchase confirmation by mail from Defendant AMG.

51. The confirmation directs Plaintiff to call 877-218-8232 or to send an email to help@vacationoffer.com.

52. As was already established, vacationoffer.com is a d/b/a of Defendant AMG.[21]

53. 877-218-8232 is the contact number listed on the vacationoffer.com website:

---

[20] https://www.allenmg.com/contact
[21] https://secure.utah.gov/bes/displayDetails.html - Allen Marketing Group, Inc.


[22]

54. The travel package that is quoted in the purchase confirmation includes a reference to the $1,000 travel savings from TravelSavingsDollars.com, the website owned by Defendant Arrivia.



---

[22] https://www.vacationoffer.com/contact

55. "Take a Test Drive" as shown above is a link at the top of the TravelSavingsDollars.com website:



56. Plaintiff has never provided his phone number or consent to call him to either AMG or Arrivia.

57. Plaintiff was not looking to purchase a travel vacation package.

58. The unauthorized solicitation telephone calls that Plaintiff received from AMG on behalf of Arrivia, as alleged herein, have harmed Plaintiff Rowan in the form of annoyance, wasted time, frustration, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

59. Seeking redress for these injuries, Plaintiff Rowan, on behalf of himself and Class of similarly situated individuals, bring suit under the TCPA.

## CLASS ALLEGATIONS

60. Plaintiff Rowan brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendants called on behalf of Defendant Arrivia more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendants called Plaintiff, and (5) for whom the Defendants claim they obtained the person's number in the same manner as Defendants obtained Plaintiff's number.

61. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their

---

[23] https://www.travelsavingsdollars.com/

subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released. Plaintiff Rowan anticipates the need to amend the Class definitions following appropriate discovery.

62. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

63. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) Whether Defendants placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(b) Whether the calls were for telemarketing purposes;

(c) Whether the calls were made with consent;

(d) Whether Arrivia is vicariously liable for AMG's calls.

(e) Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

64. **Adequate Representation**: Plaintiff Rowan will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Rowan has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff Rowan and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial

resources to do so. Neither Plaintiff Rowan nor his counsel have any interest adverse to the Class.

65. **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Rowan. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Rowan and the Do Not Registry Class)**

66. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

67. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

68. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this

subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

69. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Rowan and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

70. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff Rowan and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above.

71. As a result of Defendants' conduct as alleged herein, Plaintiff Rowan and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

72. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Rowan individually and on behalf of the Class, prays for the following relief:

73. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Rowan as the representative of the Class; and appointing his attorneys as Class Counsel;

74. An award of actual and/or statutory damages and costs;

75. An award of attorney's fees;

76. An order declaring that Defendants' actions, as set out above, violate the TCPA;

77. An injunction requiring the Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

78. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Rowan requests a jury trial.

DATED this 27th day of April, 2021.

                            **NATHAN ROWAN**, individually and on behalf of all others similarly situated,

                            By: */s/ Jared T. Green*
                            Jared Green (5179)
                            Seitz, Van Ogtrop & Green, P.A.
                            222 Delaware Avenue, Suite 1500
                            Wilmington, DE 19801
                            jgreen@svglaw.com
                            jtgreen@svglaw.com
                            (302) 888-7606

                            Stefan Coleman (FL Bar no. 30188)*
                            law@stefancoleman.com
                            LAW OFFICES OF STEFAN COLEMAN, P.A.
                            201 S. Biscayne Blvd, 28t Floor
                            Miami, FLL 33131

Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman (FL Bar no. 84382)*
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*

*\*Pro Hac Vice motion forthcoming*